IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROCONGPS, INC., | No. C 11-3975 SI |
| Plaintiff, | **ORDER RE: DISCOVERY** |
| v. | |
| SKYPATROL, LLC, *et al.*, | |
| Defendants. | |

Plaintiff Spireon (formerly ProconGPS) and defendant Skypatrol LLC have submitted several discovery disputes to the Court for resolution. Docket Nos. 133, 136, and 137.[1]

## I.     Spireon's Interrogatory No. 9

Spireon's Interrogatory No. 9 states "Separately for each of Your fourth through twelfth affirmative defenses of estoppel, latches, waiver, unclean hands, license, intervening rights, limitation on damages, limitation on the recovery of costs, and adequate remedy at law, explain all bases for the affirmative defense, identify the Documents and any other evidence that supports the affirmative defense and the individuals having the most knowledge concerning the affirmative defense, including the subjects about which they are knowledgeable." Docket No. 133, Ex. 1 at 7.

Skypatrol objects to this interrogatory on the basis that it should be counted as nine separate

---

[1] Docket No. 136 was filed under seal. Counsel have been informed by the Court's deputy clerk that when documents are filed under seal, the parties must also file a redacted version of the document in the public docket. **The parties have not filed a redacted version of Docket No. 136 and are directed to do so immediately.**

interrogatories for purposes of calculating the number of interrogatories permitted under Federal Rule of Civil Procedure 33(a). That rule states "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. Proc. 33(a). Citing district court cases from Kansas and Illinois, Spireon contends that an interrogatory seeking the basis for "boilerplate" affirmative defenses, such as those contained in Skypatrol's answer, should count as a single interrogatory. *See Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 647 (D. Kan. 2011); *Jacks v. DirectSat USA, LLC*, No. 10 C 1707, 2011 WL 382858, at *2-3 (N.D. Ill. Feb. 1, 2011). In the alternative, plaintiff requests leave to propound eight additional interrogatories.

Courts in the Northern and Eastern Districts of California have concluded that a single interrogatory asking the bases of multiple affirmative defenses should count as separate interrogatories. *See New Amsterdam Project Management Humanitarian Foundation v. Laughrin*, No. 07-00935-JF (HRL), 2009 WL 102816, at *6 (N.D. Cal. Jan. 14, 2009); *White v. Cinemark USA, Inc*., No. 04CV0397 GEB CMK, 2005 WL 3881658, at *3 (E.D. Cal. Mar. 28, 2005). This Court agrees with those decisions because each affirmative defense may be factually different. Accordingly, Interrogatory No. 9 should be counted as nine separate interrogatories. The Court will, however, grant Spireon leave to serve eight additional interrogatories, as the interrogatories seek relevant information and Skypatrol has made no showing of prejudice or burden.

**II.     Skypatrol's Interrogatory No. 2**

Interrogatory No. 2 seeks a complete description of Spireon's damages calculations. In its initial response to this interrogatory, Spireon failed to state any specific damages amount. However, Spireon announced in a press release that it estimated damages at $10 million. In an order filed October 29, 2012, the Court directed Spireon to "answer Skypatrol's Interrogatory No. 2 explaining how it reached the $10 million early estimate, and then answer Interrogatory No. 2 again with a more refined estimate once Skypatrol has produced all of its documents and an expert has analyzed them. " Docket No. 92 at 4.

The parties dispute whether Spireon has complied with the Court's order. Skypatrol asserts that

2

Spireon's supplemental response is inadequate because Spireon still has not explained how its $10 million damages figure was calculated or specify what portion of that amount Spireon contends is due to alleged infringement by Skypatrol, and fails to identify any documents supporting Spireon's damages claims. Skypatrol requests that the Court enforce its order compelling Spireon to respond to the interrogatory, or in the alternative, preclude Spireon from presenting evidence in support of its damages claim beyond the evidence set forth in its supplemental response to Interrogatory No. 2.

Spireon asserts that its supplemental response clearly and sufficiently explains how it arrived at the early estimate figure. The Court has reviewed the supplemental response and finds that it is adequate. With regard to apportionment of damages, Spireon states that its $10 million early estimate is based on infringement by all infringing companies, and that given that this was an early estimate contained in a press release and not intended to be a quantitative estimate of damages, Spireon had not at that time apportioned the amount of harm specifically attributable to Skypatrol versus the other infringing companies. Based upon these representations, the Court finds that Spireon was not required to specifically apportion the damages in its supplemental response.

Finally, with regard to documents, Spireon states that Skypatrol did not begin producing any documents in response to the Court's October 29, 2012 order until mid-December 2012, and that Skypatrol has not yet presented a witness for deposition. In addition, Spireon's economics expert has only recently been cleared under the protective order and Spireon is in the process of providing Skypatrol's confidential documents to him. Spireon states that pursuant to the Court's order, Spireon will provide a more refined estimate upon completion of its expert's analysis. The Court finds that this is sufficient.

### III. Production of documents

Spireon and Skypatrol both assert that the other's document production has been inadequate, blame the other party for failing to adequately meet and confer, and defend their own document production as reasonable and sound.

With regard to Skypatrol's document production, Spireon states that at a November 19, 2012, meet and confer, Skypatrol requested a discussion on limiting the discovery of electronically stored

information ("ESI"). Spireon responded that it was willing to discuss a search of a limited number of custodians using identified terms only after Skypatrol produced documents that could be identified through traditional methods of conferring with Skypatrol's employees and agents to identify and produce responsive documents. Spireon states that on November 29, 2012, Spireon responded to a request from Skypatrol concerning an exchange of search terms for ESI, and Spireon offered to discuss and exchange search terms provided that Skypatrol first satisfied its obligation to produce responsive documents, and informed Skypatrol that "if you are concerned that the production of a particular category of documents will be overly large, we are happy to discuss that category on a case-by-case basis to avoid a massive unneeded documents." Docket No. 137 at 1:21-22. According to Spireon, Skypatrol did not respond to Spireon's offer to discuss the production of documents on a category by category basis, and instead beginning on December 7, 2012, Skypatrol "dumped" over 410,000 pages of documents. Spireon asserts that Skypatrol's production contains a huge number of duplicate and completely irrelevant and nonresponsive documents. Spireon requests that the Court "order Skypatrol to identify the categories of P.L.R. 3-4 and/or Spireon's document request to which each of Skypatrol's production documents correspond" in accordance with Federal Rule of Civil Procedure 34(b)(2)(E)(i). *Id*. at 3:11-13.

Skypatrol responds that it repeatedly requested over several months that Spireon meet and confer with Skypatrol to reach an agreed-upon approach for each side's production of ESI, including an exchange of search terms, and that Spireon refused to do so. According to Skypatrol, Spireon insisted that Skypatrol conduct its own searches and produce documents from over 200 GB of data. Skypatrol asserts that Spireon was "well aware that Skypatrol had collected the substantial volume of ESI and that, in the absence of any agreement from Procon to narrow the scope of Skypatrol's search and production, Skypatrol would have to use broad search terms and produce a very large volume of documents, at considerable expense to Skypatrol." *Id*. at 3:21-24. Skypatrol asserts that having refused its requests to engage in a cooperative approach for limiting the scope of ESI production, Spireon cannot now complain that Skypatrol has produced "too many" documents.

Skypatrol states that in the absence of any agreement from Spireon to narrow the scope of Skypatrol's search and production of ESI, Skypatrol used reasonable search terms based on the issues

4

1  in the case and the document requests, erring on the side of broader searches to avoid later disputes that
2  Skypatrol's production was too narrow. Skypatrol states that it also ran de-duplication across its ESI
3  before production. Skypatrol states that the "duplicative documents" that Spireon cites in the letter brief
4  were attachments to different e-mails and that Skypatrol included the attachments with the e-mails for
5  completeness. With regard to the irrelevant and nonresponsive documents identified by Spireon,
6  Skypatrol states that those documents were produced because they were responsive to relevant search
7  terms such as "Pacer," the name of one of Skypatrol's products, or "Forbes," which was used as a search
8  term because Mark Forbes is the named inventor on the patents-in-suit.

9  With regard to Spireon's ESI production, Skypatrol asserts that "Procon's collection and
10 production of ESI is not even close to forensically sound, an issue which Procon has repeatedly refused
11 to discuss, despite Skypatrol's best efforts." Docket No. 136 at 2:17-19. Skypatrol asserts that at a
12 November 19, 2012 meet and confer session, Spireon was unable to identify any custodians from whom
13 ESI has been collected, any search terms used to identify responsive ESI other than "Skypatrol," or the
14 volume of ESI that had been collected or produced by Procon. According to Skypatrol, Procon admitted
15 that no counsel had participated in the collection of ESI. Skypatrol requests that the Court enforce its
16 order compelling the production of documents responsive to Skypatrol's document requests, including
17 all relevant ESI.

18 Spireon responds that it has and continues to produce documents responsive to Skypatrol's
19 document requests, that it has queried at least 16 individuals for documents responsive to Skypatrol's
20 document requests and received documents from multiple custodians, and that contrary to Skypatrol's
21 assertions Spireon's counsel was involved in the collection and production of ESI. Spireon asserts that
22 for each of the document requests, it employed the "traditional method of conferring with its employees
23 and agents to identify and produce responsive documents." *Id*. at 5:1-2.

24 Based upon the record before the Court, it appears that the parties have not engaged in a
25 meaningful meet and confer process with regard to ESI production. It is the Court's view that the
26 current document issues could have been avoided if the parties had cooperated with each other. The
27 relief that the parties seek is essentially an order directing the other side to comply with their discovery
28 obligations, and the Court believes such an order would not actually remedy any problems because both

5

parties assert that they have and are fully complying with their discovery obligations. The Court finds that the most efficient solution is for counsel who are responsible for ESI production to engage in an in-person meet and confer regarding all outstanding ESI production issues in an effort to resolve those matters. If the meet and confer is unsuccessful, the Court will refer any disputes regarding ESI production to a Magistrate Judge for resolution.

This order resolves Docket Nos. 133, 136, and 137.

**IT IS SO ORDERED.**

Dated: April 1, 2013

SUSAN ILLSTON
United States District Judge